UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | No. 5:18-cr-00529 |
| : | No. 5:20-cv-4462 |
| THOMAS C. WRIGHT : | |

**O P I N I O N**
**Motion to Vacate/Set Aside/Correct Sentence Under 18 U.S.C. § 2255, ECF No. 24 –
Dismissed in Part and Denied in Part**

**Joseph F. Leeson, Jr.**                                                                                          **March 16, 2021**
**United States District Judge**

I.  **INTRODUCTION**

On January 17, 2019, Defendant Thomas C. Wright pleaded guilty before this Court to one count of possession of child pornography, for which he received a sentence of 120 months imprisonment. Wright did not appeal from his sentence. Wright now files the present Motion to Vacate/Set Aside/Correct Sentence Under 18 U.S.C. § 2255. *See* Mot., ECF No. 24. Therein, Wright alleges two claims of ineffective assistance of counsel.

After review of the motion, the motion is dismissed and denied in its entirety. To the extent Wright challenges the factual basis of his plea, Wright's first claim is barred by the appellate waiver in the Plea Agreement that he knowingly and voluntarily entered into, and it is dismissed. To the extent Wright's first claim alleges ineffective assistance of counsel, it lacks merit and is denied. Wright's second claim lacks merit, as his attorney was not ineffective at the sentencing stage. Accordingly, the motion is dismissed and denied.

II.  **BACKGROUND**

On November 19, 2018, Wright was charged by a one count Information with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). *See* Information, ECF No. 1. On

December 12, 2018, Wright pleaded not guilty to the charge.  On January 16, 2019, in a Change of Plea hearing held before this Court, Wright changed his plea to guilty pursuant to a written Plea Agreement.  *See* Plea Ag., ECF No. 8.  Thereafter, on September 25, 2019, this Court sentenced Wright to 120 months imprisonment.  *See* Judgment, ECF No. 19.  No direct appeal was taken.

Wright timely filed the present Motion to Vacate/Set Aside/Correct Sentence under 28 U.S.C. § 2255.  *See* Mot.  Therein, Wright argues that his counsel was ineffective in failing to investigate the facts of the case prior to his signing of the Plea Agreement and in failing to present factors that would warrant a downward variance at sentencing.  *See id.*  In particular, Wright claims that his attorney failed to investigate whether the images in his possession were produced using real children.  *See id.* at 4.  In addition, Wright asserts that his counsel failed to present factors regarding the typical variance given to a like offender.  *See id.* at 5.  The Government responded to the motion, arguing for the denial of both claims.  *See* Resp., ECF No. 27.  Thereafter, Wright filed a traverse in support of his motion.  *See* Traverse, ECF No. 31.

### III.   LEGAL STANDARDS

#### A.  Review of Motion under 18 U.S.C. § 2255

Motions filed under 28 U.S.C. § 2255 are the presumptive means by which federal defendants can challenge their convictions or sentences that are allegedly in violation of the Constitution or laws of the United States or are otherwise subject to collateral attack.  *See Davis v. United States*, 417 U.S. 333, 343 (1974); *O'Kereke v. United States*, 307 F.3d 117, 122-23 (3d Cir. 2002).  Section 2255 "states four grounds upon which such relief may be claimed: (1) 'that the sentence was imposed in violation of the Constitution or laws of the United States;' (2) 'that the court was without jurisdiction to impose such sentence;' (3) 'that the sentence was in excess

of the maximum authorized by law;' and (4) that the sentence 'is otherwise subject to collateral attack.'" *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (quoting 28 U.S.C. § 2255(a)). "A district court must 'accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" *Johnson v. United States*, 294 F. App'x 709, 710 (3d Cir. 2008) (quoting *United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005) (citations omitted)). But, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000).

### B. Law Governing Waiver of Appellate Rights

"[W]aivers of appeals, if entered into knowingly and voluntarily, are valid." *United States v. Akbar*, 181 F. App'x 283, 285 (3d Cir. 2006) (quoting *United States v. Khattak*, 273 F.3d 557, 562 (3d Cir. 2001)). In determining whether a waiver has been knowingly and voluntarily made, the Third Circuit looks to both "the written waiver, signed by both [defendant] and counsel" and the plea colloquy. *See United States v. Lake*, 330 F. App'x 377, 379 (3d Cir. 2009). "A defendant's sworn statements during a change of plea hearing are presumed true and 'constitute a formidable barrier in any subsequent collateral proceedings.'" *United States v. Fuentes*, Crim. A. No. 17-320-7, 2020 WL 4226473, at *5 (E.D. Pa. July 23, 2020) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)); *see also United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005) ( "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.").

Notwithstanding, a court may invalidate a knowingly and voluntary waiver "if there is an error amounting to a miscarriage of justice." *See Akbar*, 181 F. App'x at 285. "In determining whether an error warrants invalidating an appellate waiver, . . . consideration should be given to the alleged error, its gravity, its character, the impact of the error on the parties, and the extent to which the defendant acquiesced in the result." *See id.* at 286 (citing *Khattak*, 273 F.3d at 563).

**C. Law Governing Ineffective Assistance of Counsel**

To establish counsel's ineffectiveness, a petitioner must show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) the performance was prejudicial to the defense. *See Strickland v. Washington*, 466 U.S. 668 (1984). There is a strong presumption that counsel is effective, and the courts, guarding against the temptation to engage in hindsight, must be "highly deferential" to counsel's reasonable strategic decisions. *See Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002). The mere existence of alternative, even more preferable or more effective, strategies does not satisfy the first element of the *Strickland* test. *See id.* at 86. To establish prejudice under the second element, the petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Roe v. Flores-Ortega*, 528 U.S. 470, 482 (2000) (quoting *Strickland*, 466 U.S. at 694). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689 (explaining that courts should not second-guess counsel's assistance and engage in "hindsight, to reconstruct the circumstances of counsel's challenged conduct"). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697. The court must consider the totality of the evidence, and the burden is on the petitioner. *See id.* at 687, 695.

## IV. DISCUSSION

### A. Ineffective Assistance of Counsel in Plea Agreement – Ground 1

Wright first claims that his counsel was ineffective for "failure to conduct a reasonable investigation before advising the petitioner to enter a guilty plea to a one count information." *See* 2255 Memo. 3, ECF No. 24. Wright's claim in Ground 1 can be construed two ways. On one hand, it can be construed as an effort to challenge the factual basis of his plea. Alternatively, it can be construed as a straightforward challenge to counsel's effectiveness. To the extent the Court construes Wright's first claim as the former, the claim is barred by the appellate waiver in the Plea Agreement that Wright knowingly and voluntarily signed, and accordingly, it is dismissed. To the extent the Court construes his claim as one for ineffective assistance of counsel, the claim lacks merit and is therefore denied.

#### 1. Ground 1 as Challenging the Factual Basis of the Plea

A defendant may waive his right to appeal or otherwise collaterally attack his conviction or sentence so long as the waiver is made knowingly and voluntarily. *See Akbar*, 181 F. App'x at 285 (citing *Khattak*, 273 F.3d at 562). A valid waiver may nonetheless be avoided if its enforcement would work a miscarriage of justice. *See id.* Here, Wright knowingly and voluntarily signed a valid waiver of appeal, and enforcing that waiver would not work a miscarriage of justice.

##### a. The Plea Agreement and Change of Plea Colloquy

Both the Plea Agreement and Change of Plea colloquy evidence that Wright entered into his plea of guilty, the Plea Agreement, and attendant appellate waiver knowingly and voluntarily. Beginning with the Plea Agreement Wright signed, the Agreement explicitly states that "the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the

defendant's conviction, sentence, or any other matter relating to this prosecution." *See* Plea Ag. ¶ 16.  Furthermore, paragraph 19 of the Plea Agreement states that "[t]he defendant is satisfied with the legal representation provided by the defendant's lawyer; the defendant and this lawyer have fully discussed this plea agreement; and the defendant is agreeing to plead guilty because the defendant admits that he is guilty." *See id.* at ¶ 19.  Wright signed the Plea Agreement, acknowledging assent to these provisions.  *See id.* at 12.

Contemporaneously with the Plea Agreement, Wright signed a separate Acknowledgement of Rights.  *See* Acknowledgement of Rights, ECF No. 8.  This form provides Wright with an accounting of his trial and appellate rights, noting that he is giving up these rights by pleading guilty.  *See id.*  In paragraph 6, the form states, "I understand that if I plead guilty, I have given up my right to appeal, except as set forth in the appellate waiver provisions of my plea agreement." *See id.* ¶ 6.  Wright signed the Acknowledgement of Rights form, thereby acknowledging that he knew which rights he would forego by pleading guilty.

Both the Guilty Plea Agreement and the Acknowledgment of Rights were placed in front of Wright during his Change of Plea Hearing on January 16, 2019.  *See* Change of Plea Hearing Transcript ("C.O.P. N.T. __"), ECF No. 22.  Wright acknowledged that the signatures on each form were his own and in his own handwriting.  *See id.* at 17:3-23.  Wright further acknowledged that he had read and discussed the Plea Agreement with his lawyer before signing it and that he understood the terms of the Plea Agreement.  *See id.* at 17:23–18:4.

Beyond the papers signed as part of the Plea Agreement, this Court made every effort to ensure that Wright was knowingly, voluntarily, and intelligently entering his plea of guilty.  This Court began by ascertaining Wright's educational history, whether he had been treated recently for mental illness or addiction, and whether he had taken any drugs or alcohol in the last 48

hours.[1]  *See id.* at 5:8–6:8.  Next, this Court asked Wright about the representation his attorney provided him, specifically inquiring into whether Wright and his attorney discussed the charges against him, any possible defenses thereto, and the maximum punishment Wright may receive. *See id.* at 9:4-7, 9-10, 12-13, 16-17.  Wright indicated that he and his lawyer discussed all of those items.  *See id.* at 9:11, 14, 18, 19.  Wright concluded that portion of the colloquy by indicating that he was "fully satisfied" with his counsel's representation.  *See id.* at 9:22-25.

Next, this Court undertook to ensure that Wright had signed the Plea Agreement voluntarily.  First, Wright indicated that he was not promised anything in exchange for his plea. *See id.* at 10:4-9, 11:6-11  He further indicated that he was not threatened or forced to plead guilty. *See id.* at 11:12-14.[2]  Second, this Court asked Wright, explicitly, whether he was pleading guilty voluntarily because he was in fact guilty, to which Wright responded "[y]es." *See id.* at 11:15-17.  This same question was asked again later in the colloquy, to which Wright again responded in the affirmative.  *See id.* at 7:7-11.  At that time, Wright was also asked if he voluntarily signed the Acknowledgement of Rights, to which he responded, "[y]es."  *See id.* at

---

[1]   Wright indicated that he graduated high school in approximately 2011, *see* C.O.P. N.T. 5:11-16, he was not being treated for any mental illness or addiction, *see id.* at 5:24–6:2, he had not taken any drugs or alcohol in the last 48 hours, *see id.* at 6:3-5, and was not taking any prescription medication, *see id.* at 6:6-8.

[2]   In a declaration appended to his traverse, Wright asserts that his attorney did not make him aware that he would be going to jail, and alternatively, informed him that jail time was unlikely.  *See* Wright Declr., ECF No. 31-1.  Notwithstanding, during the Change of Plea Hearing, Wright indicated that no one had promised him what sentence he would get from the Court.  *See* C.O.P. N.T. 11:7-11.  The Court advised Wright that he could receive up to twenty years of imprisonment, and Wright stated that he understood.  *See id.* at 13:8-20.  Additionally, Wright was made aware that the Court had not yet determined a sentence as a presentence report had not been prepared.  *See id.* at 11:2-5.  Wright does not provide any extraordinary circumstances to overcome the presumption that his statements under oath at the Change of Plea hearing are true.  *See Fuentes*, 2020 WL 4226473, at *5 (citing *Blackledge*, 431 U.S. at 74).

17:16-19.  Accordingly, this Court determined that Wright entered into the Plea Agreement voluntarily.  *See id.* at 31:1-8.

Thereafter, this Court undertook to determine if Wright was entering the Plea Agreement knowingly.  This Court asked Wright if he understood the terms of the Plea Agreement, to which Wright responded, "[y]es."  *See id.* at 18:2-3.  After the Government read the salient terms of the Agreement in open court, including the appellate waiver provision, Wright reiterated his complete understanding of the terms of the Agreement.  *See id.* at 23:3-13.  Thereafter, Wright indicated that he agreed to all the terms and conditions of the Agreement.  *See id.* at 23:11-13.  After Wright indicated an understanding of the terms of the Agreement, this Court asked the Government to summarize the facts that it could prove if the case were to go to trial.  *See id.* at 27:21-23.  Wright indicated that the Government correctly summarized the facts and that he fully admitted to all of those facts.  *See id.* at 29:24–30:3.  Accordingly, this Court found that Wright entered the Plea Agreement knowingly.  *See id.* at 31:1-8.

Based on the Plea Agreement, Acknowledgement of Rights, and the extensive colloquy undertaken, this Court finds that Wright knowingly and voluntarily entered into the Plea Agreement and the attendant waiver of appellate and collateral attack rights.

        **b.**        **Enforcement of the Waiver Does Not Work a Miscarriage of Justice**

A valid waiver may nonetheless be invalidated if its enforcement works a miscarriage of justice.  *Akbar*, 181 F. App'x at 285 (citing *Khattak*, 273 F.3d at 562).  In determining whether the waiver should be invalidated, courts review "the alleged error, its gravity, its character, the impact of the error on the parties, and the extent to which the defendant acquiesced in the result."  *See id.* at 286 (citing *Khattak*, 273 F.3d at 563).  Here, Wright does not allege any error that would work a miscarriage of justice.  As part of the Plea Agreement and Change of Plea

Hearing, Wright agreed at multiple junctures that the images were created using real children. *See* Pl. Ag. ¶ 13(a) ("The defendant stipulates that . . . he possessed an internet link to a Dropbox account, and that in the folder to which that link connected were nine videos of minors engaged in sexually explicit conduct *produced using minors engaged in such conduct*." (emphasis added)); C.O.P. N.T. 19:20-24, 20:2-7, 28:23–29:1. Additionally, at the Change of Plea Hearing, Wright *himself* admitted to all of the facts that the Government stated it could prove if the case were to proceed to trial, which included the recitation that the images were produced using children. *See id.* at 28:23–29:1, 29:24–30:3. Moreover, Wright was reminded by this Court during the colloquy that, if he were to go to trial, it would be the Government's burden to prove each and every element of the offense beyond a reasonable doubt. *See id.* at 25:8-12, 26:25–27:2. Wright was explicitly told during the colloquy that, if taken to trial, the Government would have to prove that the production of the images "involve[d] the use of a minor." *See id.* at 27:4-9. Thereafter, Wright responded "yes" when the Court asked him if understood the elements and again when asked whether "those elements correctly describe what [he] did on the occasion of this offense." *See id.* at 27:15-20.

By electing to go forward with his guilty plea, Wright voluntarily and knowingly waived his right to trial, thereby waiving his right to litigate the issue of the production of the videos. Moreover, Wright expressly waived the right to have the Government prove every element of the offense beyond a reasonable doubt at trial. In light of the knowing and voluntary plea, Wright cannot now assert that the Government was or would be incapable of proving each element of the offense beyond a reasonable doubt. Accordingly, finding no error in the Plea Agreement or Change of Plea Hearing, enforcement of the appellate waiver does not work a miscarriage of justice.

Finding that the waiver has been knowingly and voluntarily entered into and that enforcement of the waiver does not work a miscarriage of justice, the waiver acts to bar the claim Wright asserts in Ground 1 to the extent Wright challenges the factual basis for his plea. Accordingly, to that extent, Ground 1 is dismissed.

2. **Ground 1 as Ineffective Assistance of Counsel Claim**

In the Plea Agreement, the Government and Wright agreed to allow Wright to appeal or lodge a collateral attack on the grounds that his counsel provided constitutionally ineffective assistance. *See* Plea Ag. ¶ 16. Wright attempts to fit Ground 1 within this carve-out to the appellate waiver, alleging that Counsel was ineffective for failing to investigate the facts of the case prior to Wright's signing of the Plea Agreement. *See* 2255 Memo. 3. Wright claims that counsel was ineffective for not undertaking an investigation into whether production of the images involved real children. *See* Traverse 6. Notwithstanding, Wright shows neither unreasonable action nor resultant prejudice with respect to this claim.

Foremost, there are no facts in the record to suggest that the images were not produced using real children. Importantly, Wright indicated during the Change of Plea hearing that he discussed with counsel both the charges against him *and* any possible defenses to those charges. *See* C.O.P. N.T. 9:12-14. Furthermore, Wright does not now claim that he ever raised an issue with counsel regarding the production of the images.

Although Wright now claims that his communication with his counsel was insufficient, these assertions directly contradict Wright's statements made under oath during the Change of Plea Hearing, and Wright does not provide extraordinary circumstances to overcome the presumption that his statements at the Change of Plea Hearing are true. *See Fuentes*, 2020 WL 4226473, at *5 (citing *Blackledge*, 431 U.S. at 74). Wright indicated at multiple junctures of the

Change of Plea Hearing that he communicated with his lawyer about the charges against him and any possible defenses to those charges, and that he was completely satisfied with his lawyer's representation. *See* C.O.P. N.T. 9:4–10:3, 17:24–18:1. When asked if he had been given enough time to communicate with his lawyer, Wright indicated in the affirmative. *See id.* at 9:19-21. Accordingly, Wright's new arguments regarding his communication with his attorney are unavailing.

Moreover, following consultation with his attorney about the charges, defenses, and the Plea Agreement itself, Wright decided to plead guilty. The Plea Agreement made very clear that Wright was stipulating that the images were produced using minors engaged in sexual conduct. *See* Pl. Ag. ¶ 13(a). This fact was also raised numerous times during the Change of Plea Hearing.[3] *See* C.O.P. N.T. 19:20-24, 20:2-7, 28:23–29:1. Wright fully admitted to these facts.[4]

---

[3]     In his reply, Wright makes much of the fact that he is not an "expert" in identifying whether a video is produced using minors engaged in sexual conduct. *See* Traverse 8. However, courts widely agree that the matter of whether pornographic images or videos are produced using minors does not require expert testimony. *See United States v. Irving*, 452 F.3d 110, 122 (2d Cir. 2006); *see also United States v. Farley*, 389 F.3d 639, 654 (6th Cir. 2004) ("[I]t appears that no circuit requires that expert evidence be introduced to prove the reality of children portrayed in pornographic images."). Accordingly, there is no basis for invalidating Wright's stipulation to the facts of the production of the videos simply because Wright is not himself an expert.

[4]     In his reply, Wright argues that there was no corroborating evidence, besides the images themselves, to establish that they were produced using minors. Wright relies heavily on *United States v. Irving*, 452 F.3d 110 (2d Cir. 2006). Notwithstanding, *Irving* is distinguishable for a very significant reason; *Irving* was tried before a jury. *See id.* at 114. In fact, *Irving* notes that the purpose of corroboration is to "serve[] a 'gatekeeping function' in that it prevents *juries* from convicting on unreliable evidence." *See id.* at 118 (emphasis added) (quoting *United States v. Bryce*, 208 F.3d 346, 354 (2d Cir. 2000)). Unlike Irving, Wright knowingly and voluntarily chose to proceed by guilty plea, and therefore, there is no concern of a lay jury convicting him on unreliable evidence.

Moreover, at the Change of Plea Hearing, the Government was asked to summarize the facts it "*could* prove *if* the case were to go to trial." *See* C.O.P. N.T. 27:21-23 (emphasis added). Wright fully admitted to all of those facts. *See id.* at 28:23–29:1, 29:24–30:3. The Government was not asked to provide an accounting of the documents and witnesses through which it could prove those facts if required to go to trial. Wright merely assumes that the Government would have no evidence to corroborate the production of the images. Given Wright's admission to all of

*See id.* at 28:23–29:1, 29:24–30:3. If Wright believed that the Government could not meet his burden of proving this element of the claim, then the Plea Agreement was Wright's to reject. Notwithstanding, Wright knowingly and voluntarily entered into the Plea Agreement after reviewing it with his lawyer and reviewing it before this Court.

In light of Wright's admission of the facts and in the absence of any evidence that Wright raised the issue of production with his counsel at any stage of the proceedings, defense counsel would have no reason to request that the Government put on testimony or otherwise conduct an independent investigation into the production of the videos.

Accordingly, counsel did not act unreasonably by not requiring testimony from the Government or not conducting an investigation into the production of the videos. Thus, to the extent Ground 1 is construed as a challenge to counsel's effectiveness at the Plea Agreement stage, it is denied.

### B. Ineffective Assistance of Counsel at Sentencing – Ground 2

Wright next alleges that his counsel was ineffective "for failing to present factors pointing to why the trial court should grant a variance from the guideline range." *See* Mot. 6. Wright specifically alleges that his counsel failed to present expert testimony regarding Wright's propensity for recidivism and failed to present statistics as to the variances given to similar offenders. *See id.* To make out a claim for ineffective assistance of counsel, Wright must show that counsel's actions fell below an objective standard of reasonableness, and that Wright was prejudiced by those unreasonable actions. *Strickland*, 466 U.S. 668. Here, counsel's actions

---

the facts, the Government had no reason to put on testimony or other evidence to prove the production of the images.

with respect to arguing for a variance at sentencing were not objectively unreasonable. Moreover, Wright fails to show any resultant prejudice. Accordingly, Ground 2 is denied.

Wright claims that his counsel failed to present factors to the court that would suggest a variance was appropriate. *See* Mot. 6. However, both the Defendant's Sentencing Memorandum and Sentencing Hearing belie this claim. Beginning with the Sentencing Memorandum, counsel captioned the memorandum "Defendant's Sentencing Memorandum and Motion for Downward Variance." *See* Def. Sent. Memo., ECF No. 17. Therein, counsel argues for a downward variance under a number of legal and policy-based theories. *See id.* As early as the second page, counsel argues for a downward variance, asserting that the United States Sentencing Guidelines § 2G2.2 enhancements lead to inflated sentences. *See id.* at 2. Counsel next reviewed the history of the enhancements and the treatment of § 2G2.2 enhancements in the courts. *See id.* at 5-8. In particular, counsel highlighted those cases that found the § 2G2.2 enhancements "flawed." *See, e.g., id.* at 7 (citing *United States v. Grober*, 624 F.3d 592, 596 (3d Cir. 2010)). Counsel then turned to addressing specific § 2G2.2 enhancements as they were applied to his client. *See id.* at 8-9. Counsel argued, in part, that Wright should not be subject to enhancements for use of a computer and the number of images. *See id.*

While much of counsel's argument for a variance involved § 2G2.2, counsel made further arguments for a variance under the statutory factors of 18 U.S.C. § 3553(a). Among those arguments, counsel addressed the role that recidivism plays in calculating guideline sentences. *See id.* at 10-11. Specifically, counsel cited a United States Sentencing Commission report, which states that "[t]he guidelines' offense level is not intended or designed to predict recidivism." *See id.* at 10 (citing U.S. Sent'g Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 15 (2004)). Counsel also cited

case law in an effort to argue that harsher punishments do not lead to a reduction in recidivism. *See id.*

Accordingly, counsel thoroughly addressed each of the subjects that Wright takes issue within his motion. First, counsel addressed the relation of recidivism to Wright's guideline range. Although Wright would have liked counsel to call an expert witness to attest to *his own* odds of recidivism, counsel's decision against calling an expert was not objectively unreasonable. Counsel cited both caselaw and United States Sentencing Commission guidance that suggests a lack of correlation between the guidelines, punishment, and recidivism. The apparent strategy of defense counsel was to diminish, if not remove altogether, the impact of potential recidivism from the Court's consideration in choosing the appropriate sentence. To call an expert to testify to Wright's propensity for recidivism after arguing that the guidelines do not contemplate recidivism would be to put forth conflicting theories. Moreover, had counsel called an expert, that expert would have been subject to cross-examination by the Government.[5] In light of the guidance cited and the risk of cross-examination, counsel acted reasonably in opting against calling an expert witness to testify as to Wright's odds of recidivism.

Second, counsel thoroughly argued for a downward variance. Counsel lodged arguments under both the 2G2.2 enhancements and the 3553(a) factors, citing USSC guidance, case law, and the history of the enhancements. Counsel expanded upon these arguments during the Sentencing Hearing. *See* Sent. N.T. 9:1–13:9. Although Wright would have preferred counsel to

---

[5]    Along with its response, the Government filed an affidavit of Department of Homeland Security Special Agent David Bottalico. *See* Bottalico Declr., ECF No. 28. Bottalico notes that during an interview of Wright at his residence on April 19, 2017, Wright told the agent that he had "been viewing child pornography for approximately ten years, along with adult pornography." *See id.* at ¶ 4. Had Wright's counsel opted to call an expert to testify as to recidivism, the Government may have drawn out information regarding Wright's history of viewing child pornography on cross-examination.

cite to the percentage of variances granted in similar cases, counsel's arguments were nonetheless thorough and addressed specific reasons for a variance in Wright's case, not merely generalized statistics regarding variances granted in other cases.[6]  In light of counsel's arguments, this Court cannot say that counsel acted in an objectively unreasonable manner in the strategy that counsel employed in an effort to secure a variance in this case.

Moreover, Wright fails to show the prejudice required to establish ineffective assistance of counsel.  In fashioning an appropriate sentence, this Court heard and considered both (1) the arguments proposed by counsel regarding the correlation between recidivism and the guideline range, and (2) the need to avoid unwarranted sentencing disparities across similarly situated defendants.[7]  *See id.* at 19:19-22.  The matters that Wright points to in his motion were a part of the Court's consideration in fashioning his sentence.  Accordingly, there is no resultant prejudice.

Wright fails to show the unreasonable action or prejudice required to establish an ineffective assistance of counsel claim in Ground 2.  Accordingly, Ground 2 is denied.

V.      **CERTIFICATE OF APPEALABILITY**

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a 'circuit justice or judge' may issue a COA [certificate of appealability] only if the petitioner 'has made a substantial showing of the denial of a constitutional right.'"  *Tomlin v. Britton*, 448 F. App'x 224, 227 (3d Cir. 2011) (citing 28 U.S.C. § 2253(c)).  "Where a district court has rejected the

---

[6]     Wright would have had counsel point to that fact that a variance is granted in 61.2% of child pornography cases.  *See* Mot. 6.  However, this statistic represents just over half of all cases, and accordingly, it does not provide a particularly strong rationale for granting a variance in any one case.  Moreover, acknowledging the principle that the facts of each case are unique, this generalized statistic does not provide a strong rationale for granting a variance in Wright's particular case.

[7]     It is also of note that Wright received a sentence that was within the guidelines range.

constitutional claims on the merits, . . . the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Under one construction, Wright's first claim is barred by the appellate waiver in the Plea Agreement that he knowingly and voluntarily signed. Under another, Wright's first claim lacks merit. Additionally, Wright's second claim lacks merit. For the reasons set forth above, Wright has not made any substantial showing of the denial of a constitutional right, nor would jurists of reason find this Court's review of his claims debatable or wrong. Therefore, a Certificate of Appealability shall not issue.

## VI.  CONCLUSION

Both of Wright's claims for ineffective assistance of counsel fail. Wright's first claim is dismissed and denied as set forth above. Wright's second claim lacks merit, and accordingly, it is denied. Moreover, an evidentiary hearing is unnecessary because Wright's claims rely on allegations that directly contradict his statements made under oath during his Change of Plea Hearing. *Lemaster*, 403 F.3d at 221-22. Accordingly, the request for an evidentiary hearing is denied. Finally, a certificate of appealability shall not issue. A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*

JOSEPH F. LEESON, JR.
United States District Judge